■ ALBERT MENNA et al., Respondents, v. STATE OF NEW YORK, Appellant. (Claim No. 33466.) — The State appeals from a judgment of the Court of Claims which awarded the sum of $8,200 and interest to claimants as compensation for the appropriation of real property. Since we think the case turns

upon the validity and effectiveness of an "Agreement of Adjustment" entered into by claimants and the State, we will refer only to that phase of the record. After title was taken pursuant to the Highway Law by the filing of appropriation maps, claimants and the State, through the Department of Public Works, agreed upon the sum of $2,200 as compensation for the taking. Subdivision 12 of section 347 of the Highway Law authorizes the adjustment of claims for "the value of the property appropriated and for legal damages caused by such appropriation" and provides for the conditions precedent to the payment of the amount of the adjustment. In August, 1954, claimants executed a written Agreement of Adjustment and, through their attorney, delivered the same to the Department of Public Works which thereafter approved the agreement and transmitted it to the Comptroller's office. By its terms the State agreed to pay and the claimants agreed to accept the sum of $2,200 "for the total value of the property so appropriated and for all legal damages caused by such appropriation." The agreement provided that, as a prerequisite to payment, claimants would "execute and deliver or cause to be executed and delivered" to the Attorney-General all formal papers which he deemed necessary to effectuate a full release of all claims by reason of the appropriation. Claimants were notified that general releases would be required from the holder of an outstanding mortgage on the premises and from a person having an inchoate dower interest therein. Such releases were never obtained and eventually claimants' attorney advised the Department of Public Works that he was unable to obtain the releases and was told that the money could not be paid without them. Thereafter, through different attorneys, claims were filed. Upon the trial the State asserted the Agreement of Adjustment. The Court of Claims held that the agreement was not binding because it was not acted upon after its execution, and that the agreement was abandoned by both parties. We find nothing in this record to justify a conclusion that the State abandoned the agreement. It certainly did not expressly abandon it, and we see nothing from which an abandonment by the State could be implied. The fact that the State did nothing except insist upon the releases is of no moment. It was not required to do anything until the releases were delivered. There is no such thing as a unilateral abandonment of a contract, and this agreement remained a binding agreement as to the amount of claimants' compensation. Claimants urge that performance of the agreement was "impossible". Performance was not impossible in a legal sense. Claimants had agreed to deliver these necessary documents and the fact that they were unable to obtain them and thus fulfill their own agreement does not give them any legal right to payment under the agreement or any legal right to cancel the agreement. Likewise, the words "Kindly hold the agreement in escrow until the check is paid", contained in the letter of transmittal of the agreement by the claimants' attorneys to the State, does not release claimants from the terms to which they agreed. Of course it was not a true "escrow" arrangement because delivery was to the other party to the agreement, but, under the circumstances of this case, the instruction is meaningless. No payment or "check" ever became due because of the failure of claimants to fulfill their agreement. Judgment modified, on the law and the facts, by reducing the amount thereof to $2,200, with appropriate interest, and as so modified is affirmed, without costs. Bergan, P. J., Coon, Gibson, Herlihy and Reynolds, JJ., concur.